Jessie A. Heasley *v.* Jeremiah H. Heasley, Jr., Appellant.

*Beneficial associations—Change of beneficiary—Right to fund—Insurance.*

An association organized under the Illinois act of June 27, 1874, not to do business for profit or gain, but to aid pecuniarily the widows, orphans, heirs and devisees of its members, is not an insurance company. Northwestern Masonic Aid Assn. v. Jones, 154 Pa. 99, followed.

Where a member of a beneficial association has a right to change the beneficiary named in his certificate, and he does so, and receives a new certificate upon an affidavit that the first certificate was lost or destroyed, the beneficiary named in the first certificate, or his representative, has no right to claim the fund from the mere fact that he holds the first certificate in his possession at the time of the member's death.

Where H., a member of a beneficial society, after the death of his son P., beneficiary in the certificate, acting on the by-law of the society authorizing change of beneficiary on surrender of the certificate, or, in case of its loss or destruction, on an affidavit setting forth the circumstances, obtained a new certificate, naming his son J. as beneficiary, on an affidavit that the first certificate was lost or destroyed, and that he was unable to obtain it, when in fact it was in the possession of P.'s widow, who had refused to give it up, because P. had bequeathed the same to her, the widow is entitled to none of the fund payable on the death of H., though she and P. had made payments of assessments on the first certificate.

Argued Nov. 1, 1898. Appeal, No. 62, Oct. T., 1898, by defendant, from decree of C. P. No. 2, Allegheny Co., July T.,

1896, No. 204, on bill in equity. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Bill in equity for an interpleader.

The facts appear by the opinion of WHITE, P. J., which was as follows:

Jeremiah H. Heasley, living in Emlenton, Venango county, Pennsylvania, was a member of the Northwestern Masonic Aid Association of Chicago, Illinois, and had a certificate for the payment by the association of $5,000 at his death. The original certificate was issued March 10, 1879, numbered 3288, payable at his death to his son, Pitt O. Heasley, if then living, and if not, then to his own legal representatives. On his own application and at his request, on surrendering that certificate, the association, on December 20, 1879, issued another, in place of the first certificate, retaining the same number, payable at his death to his son, Pitt O. Heasley, if living, and if not, then to the devisees or legal heirs of his said son. On March 13, 1890, the said Jeremiah H. Heasley applied to the association for a new certificate, in place of the second one above mentioned, alleging it was lost or destroyed; thereupon the association issued a third certificate, dated December 20, 1890, payable at his death to his son, Jeremiah H. Heasley, Jr., or to the heirs of Jeremiah H. Heasley. The father died in 1896, his son, Jeremiah H. Heasley, Jr., surviving. Pitt O. Heasley died in 1889, devising all his estate to his widow, the plaintiff. She and the son Jeremiah each claimed the fund. The association paid the money into court, filing a bill for the parties to interplead, and this issue was formed.

The contention on part of plaintiff is that it was a contract of insurance, and that under the will of her husband she had such an interest in the policy or certificate that it could not be changed without her consent; on the part of defendant, that it was merely a certificate in a benevolent association, and the father could change the beneficiary at his will.

### FINDINGS OF FACT.

1. The association was organized and incorporated under the laws of Illinois, June 27, 1874, as a benevolent association. The

articles of association on which it was incorporated, state, " The particular business and object for which said association is formed is to secure pecuniary aid to the widows, orphans, heirs and devisees of deceased members of said association." But the by-law of the association adopted in 1874, and continued the same until 1889, was not so restricted as to the beneficiary. Article 4, in relation to " membership," section 4, was in these words : " In all applications for membership the applicant shall designate to whom he desires benefits paid, and his certificate of membership shall be made in conformity therewith." It then provided that upon surrender of the old certificate he might change the beneficiary, numbered the same as the old. Section 3 provided that the " certificate shall contain the terms of the agreement or contract between the association and the member to whom it is issued."

2. The by-laws provided for the classification of members into divisions and classes, according to age, and the amount of assessment to be paid on the death of a member of that division and class. Jeremiah H. Heasley belonged to division B and class 4. He was to pay on the death of a member of his division, according to article 5 of the by-laws, an assessment of $1.40 on notice from the board of trustees. There were no sick benefits or funeral expenses. By article 6 of the by-laws, on the death of a member, the board of trustees shall pay " to such person or persons as shall appear legally entitled to receive the same as follows, viz : for each member of the same division with the deceased, for class 4, $1.20, provided that the aggregate sum so paid shall in no case exceed . . . . in division B $5,000."

3. The certificate issued specified no sick benefits or funeral expenses. Containing the provisions of the by-laws in reference to divisions and classes, they stated that, if the deceased member had paid all his assessments, the association did " promise and agree on proof of his death, to pay to the beneficiary for every member of division B and class 4, $1.20, provided, however, that the aggregate sum so to be paid by this association, shall in no event exceed the sum of $5,000," etc.

4. These provisions of the by-laws and certificates place the contract between the association and the members on the footing of a life insurance. Nothing is to be paid to the member during his life ; nothing for sickness, debts, or funeral expenses.

At his death the beneficiary is to receive, if the deceased belonged to division B and class 4, $5,000, if an assessment of $1.20 per member of all the members of that division and class amounted to that sum.    The association was really doing business as an insurance company on the assessment plan, but under cover as a beneficial association.

5. And this was the light in which the officers regarded it.    In the annual report of the board of trustees to the association, at Chicago, January 9, 1889, referring to the great amount of business of the previous year, and the wonderful prosperity of the association, the report says : " We are, if possible, more and more convinced of the wisdom of our plan, the permanency of our system, and the continued success of the Northwestern Masonic Aid Association, so long as there shall be a demand among healthy men for life insurance at cost."    Again in the report of January 8, 1890, for the year 1889, the board of trustees speak in glowing terms of their business and prosperity, and say, " the Northwestern Masonic Aid Association has never consolidated with or reinsured any other company."    But applicants have come voluntarily, "convinced of the desirability of our plan of insurance."    These reports do not refer to any change in their plan, from the beginning, but refer to the character of their business all along.    Neither was there any material change in the by-laws, although the association may have had enlarged powers under later legislation.    This character of the business of the association from its start, in 1874, is confirmed by the testimony of James A. Stoddard, who was the secretary of the association from 1874 to 1893.    He says in his deposition, the association "issued policies upon the life of any one, either a Mason or recommended by a Mason."    At the time the certificate of December 20, 1879 (the second), was issued, it was customary for the association to issue certificates "payable similarly to the manner in which this is payable ; " the company did not pay any sick benefits, its business was confined "strictly to life insurance, payable upon death to the policy holder ; " the divisions, A, B, etc., were made to designate at that time the amount of insurance which each man carried.    " Commissions were paid agents for obtaining new members or new insurance."    Upon the death of a member assessments were made " to pay the amount of his insurance ; " the association had " no philan-

thropic or benevolent purpose other than to collect and pay to the beneficiaries of a member, upon his death, the amount of insurance which he had obtained;" "a good many payments were made out of the accumulated surplus or assets of the association." " The sole and only object or purpose of the association was to offer indemnity or security for loss of life of the members insured." " This company has paid over such losses amounting to a million and a quarter of dollars, out of moneys saved out of the expense element of the assessments." These extracts from the testimony of Mr. Stoddard are conclusive of the real character of the association, from its inception, and long before it openly became an insurance company. The annual reports of the board of trustees as to the financial affairs of the association, its annual receipts, expenses, payments, commissions, etc., are consistent only with an insurance business. In 1896 the name was changed to the " Northwestern Life Assurance Company."

6. The assessments were generally paid bimonthly. From the date of the first certificate, March 10, 1879, to his death in 1889, Pitt O. Heasley paid all the assessments, and both certificates, that of March 10, 1879, and December 20, 1879, were in his possession; he surrendered the first when the second was issued. It was in his possession at the time of his death, and has remained in the possession of his widow and devisee ever since. She paid the assessments for one year after his death, until February, 1890, when the father got the third certificate. She and her husband paid the assessments for eleven years. After the father took out the third certificate, making his son, Jeremiah, Jr., the beneficiary, she offered to pay to the association the assessments as they were made, and continue to pay the same, but the association refused to receive the money from her. Jeremiah, Jr., paid the assessments after that until his father's death, six years. The exact amount paid by each party was not in evidence, but the evidence indicates, and the fact is so found, that the assessments for each year were $100.

7. Just before the third certificate was taken out, Jeremiah, Jr., at the request of his father, applied to the widow to give up the certificate she held (the second), but she refused to surrender it, claiming an interest in it by virtue of the will of her husband.

8. The application of the father to the association for the third certificate, March 22, 1890, and to change the beneficiary, was on the ground that that certificate was " lost or destroyed." Yet in that application he says, that after the death of Pitt O. Heasley that certificate came into the possession of his widow, and whether it was destroyed or not, he cannot state, but he is " unable to obtain the certificate at present to forward for cancelation," as the by-laws required. That was express notice to the association that that certificate was not lost, but in possession of the widow, who refused to surrender it and might claim an interest in it.

### CONCLUSIONS OF LAW.

It is contended on part of defendant that the member of a benevolent association can change the beneficiary at will, and the beneficiary takes no interest that requires consent or notice before the change. That principle is not denied, but it does not apply to this case, because, while the association was a benevolent association in name, it was virtually doing an insurance business, and this was a contract of insurance. Even if that is true, it is further contended that under the statutes of Illinois the association had no right to engage in the insurance business, and it would be ultra vires. I doubt whether the association could raise that question after receiving the assessments for so many years. It does not raise the question, but has paid the money into court, and asked for an issue to determine which of these parties is entitled to the money. If the association could not raise that question, how can either of these parties raise it? The question before us, and the only question, is this : under these certificates, these contracts, and the facts of the case, which of these parties is entitled to the money, or how shall it be distributed?

There are equities in this case which will aid us in a decision. This is virtually a contract of insurance. The father paid none of the assessments (with the exceptions perhaps of one or two assessments after the death of his son Pitt, but these were refunded to him by the widow). His son Pitt and the widow paid them for eleven years, thus keeping the policy alive. Jeremiah, Jr., paid them for six years, keeping it alive until the father's death. Each receives a benefit from what the other

did.  They both contributed to secure the fund now in court, and for distribution; it is a fund raised by the payment of assessments for seventeen years; the plaintiff and her husband paid for eleven years, eleven seventeenths of the whole, and the defendant for six years, six seventeenths of the whole.  It would be manifestly unjust to give the entire fund to one, to the exclusion of the other.

The defendant's counsel referred to the case of Northwestern Masonic Aid Association v. Jones, 154 Pa. 99, but that case does not touch on this controversy.  The contention there was whether the widow or executrix took the fund, or whether it went to the "heirs" under the intestate law.  The contract was regarded rather as an insurance, and the question was whether the widow, who had a power of appointment under the will, could claim the money, or whether it should go in accordance with the express words of the policy, "to the heirs at law of William D. Jones."  The facts of that case were wholly different from the facts in this case.

The court entered the following decree:

And now, February 4, 1898, this cause came on to be heard at this term and was argued by counsel and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz:

That the money paid into court by the Northwestern Masonic Aid Association be paid to the said Jessie A. Heasley and Jeremiah, Jr., in the following proportion, to wit: eleven seventeenths thereof, or the sum of $3,235.29$\frac{2}{7}$, to the said Jessie A. Heasley, and six seventeenths thereof, or $1,764.70$\frac{10}{17}$, to said Jeremiah, Jr.; that the said Jessie A. Heasley and Jeremiah H. Heasley, Jr., pay the costs of this case in the same proportions, that is, the said Jessie A. Heasley shall pay eleven seventeenths thereof and the said Jeremiah H. Heasley, Jr., shall pay six seventeenths thereof.  The prothonotary is hereby directed to pay out the money paid into court as aforesaid to the said Jessie A. Heasley and Jeremiah, Jr., in accordance with this decree.

*Error assigned* among others was the decree of the court.

*C. Heydrick*, with him *Carl I. Heydrick*, for appellant.—The distinction between life insurance and that form of charity ad-

ministered by beneficial associations has been frequently pointed
out by this and other courts : Com. v. Beneficial Assn., 137 Pa.
412 ; Dickinson v. A. O. U. W., 159 Pa. 258 ; Masonic Mut.
Ben. Soc. v. Burkhart, 110 Ind. 189.

The association being purely beneficial, the beneficiary named
in one of its certificates has no vested rights thereunder while
the member upon whose death the benefit is payable lives :
Masonic Mut. Ben. Soc. v. Burkhart, 110 Ind. 189 ; Beatty's
App., 154 Pa. 484 ; Fisk v. Equitable Aid Union, 20 W. N. C.
290 ; Byrne v. Casey, 70 Tex. 247.

The provision of the by-law for surrender of certificates in
cases of change of beneficiary is designed for the protection of
the association, and may be waived by the association : Nat.
Mut. Aid Assn. v. Lupold, 101 Pa. 111 ; Manning v. A. O. U.
W., 86 Ky. 136 ; Splawn v. Chew, 60 Tex. 532 ; Grand Lodge
v. Child, 70 Mich. 163.

The original beneficiary will not be heard to complain that a
change of beneficiary has not been made according to the rules
of the insurer : Martin v. Stubbings, 126 Ill. 387 ; Grand Lodge
v. Noll, 90 Mich. 37 ; Grand Lodge v. Child, 70 Mo. 163.

The devisees of said son must be intended to be such persons
as, under the law of the association, could be designated as
beneficiaries. The appellee, not being within any of the pre-
scribed classes, is not entitled to the benefit : Palmer v. Welch,
132 Ill. 141 ; Alexander v. Parker, 144 Ill. 355.

_A. Leo Weil_, with him _Charles M. Thorp_, for appellee.—The
interest of a beneficiary in a policy of insurance is a vested
interest, and cannot be divested by any act of the insured,
without the consent of the beneficiary : 1 Bacon on Beneficial
Societies, sec. 289 ; Central Bank v. Hume, 128 U. S. 195 ;
Waltz v. Mut. Aid Soc., 5 Pa. C. C. R. 208 ; Vollman's App., 92
Pa. 50 ; Brown's App., 125 Pa. 303 ; Malone's Est., 9 Ins. L.
J. 767.

The Northwestern Masonic Aid Association was an insurance
company, and not a beneficial society, and the contract of De-
cember 20, 1879, an insurance policy : Com. v. Mut. Aid Union,
137 Pa. 414 ; Berry v. Knights Templars, etc., Indemnity Co.,
46 Fed. Rep. 439 ; Com. v. Wetherbee, 105 Mass. 149.

Even if this association was a beneficial association as claimed

by appellant, the interest of Pitt O. Heasley, under the contract of December 20, 1879, was a vested interest, and could not be affected by any act of the assured : Maynard v. Vanderwerker, 30 Abb. New Cases, 134 ; Smith v. National Benefit Society, 123 N. Y. 85 ; Jory v. Supreme Council, 105 Cal. 20.

OPINION BY MR. JUSTICE MITCHELL, May 23, 1899:

This is an interpleader between claimants to a fund brought into court by the Northwestern Masonic Aid Association in discharge of its liability on a certificate of membership issued to Jeremiah H. Heasley, Sr.

The association is an Illinois corporation, chartered as a beneficial association, and it issued its certificate of membership in that capacity. By the law of Illinois such associations are not insurance companies. Prima facie this association therefore was a beneficial association, and it was so held in Northwestern Masonic Aid Association v. Jones, 154 Pa. 99, where it was said by THOMPSON, J., in delivering the opinion of the Court, " The purpose of the association was to secure pecuniary aid to the widow, orphans, heirs and devisees of deceased members. . . . . It is not an insurance company, nor are these certificates, issued by it in the state of Illinois, contracts of insurance." The undertaking of insurance companies and of beneficial associations being alike to pay money after death, their business inevitably runs upon closely allied lines, but the distinctive marks are pointed out with great clearness by our late Brother CLARK, in Com. v. Association, 137 Pa. 412. We have examined the evidence in the present case and are of opinion that it was not sufficient to overcome the presumptions from the charter of the association and the law of Illinois, nor to justify a disregard of the prior decision of this Court on the status of this association.

Heasley, Sr., as a member, had a right to change the beneficiary named in his certificate at his will upon the surrender of the certificate, or, in case of its loss or destruction, upon an affidavit setting forth the circumstances. These latter provisions were clearly for the protection of the association itself, and did not create any right in the beneficiary or any other person by the mere possession of the certificate. In 1890, after the death of his son Pitt, the first beneficiary, Heasley, Sr., procured a

new certificate, naming his son J. H. Heasley, Jr., as beneficiary, upon an affidavit that the first certificate was lost or destroyed and that he was unable to obtain it.   It appears that in fact it was at that time in possession of the plaintiff, the widow of the first beneficiary, Pitt, but she had refused to give it up, and it was therefore true that Heasley, Sr., was unable to obtain it for purpose of surrender.   The plaintiff's husband, being a mere voluntary beneficiary, had no vested right in the certificate or the money to become due upon it which he could transmit to her by will or by possession of the instrument.   When Heasley, Sr., exercised his privilege as a member to change the beneficiary, and the association accepted his affidavit as a compliance with its by-law and issued the new certificate payable to J. H. Heasley, Jr., the latter's right attached, and the widow of the former beneficiary had no standing to question it.

The learned judge below divided the fund by an equitable proportion based on the payments of assessments by the parties respectively.   But there was no basis for such division.   So far as appears, all the payments, during the life of Heasley, Sr., were voluntary, and could not interfere with his rights as a member.   Had they been made under a contract with him, the case might have been different, and an equity made out, but such contract is neither averred nor proved.

Decree reversed, and fund directed to be paid to appellant, J. H. Heasley, Jr.   Costs to be paid by appellee.